## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
## WESTERN DIVISION

### No. 5:12-CV-775-D

| | |
|---|---|
| JEFF E. SAUNDERS, | ) |
| | ) |
| Plaintiff/Claimant, | ) |
| | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| CAROLYN W. COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-22, DE-24] pursuant to Fed. R. Civ. P. 12(c). Claimant Jeff Saunders ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of his applications for a period of disability, Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends denying Claimant's Motion for Judgment on the Pleadings, granting Defendant's Motion for Judgment on the Pleadings and upholding the final decision of the Commissioner.

## STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB and SSI on May 14, 2007, alleging disability beginning April 1, 2005. (R. 245-59). Claimant subsequently amended his alleged onset date to February 1, 2005. (R. 270-71). Both claims were denied initially and upon reconsideration. (R. 152-53, 178-82, 187-204). A hearing before the Administrative Law Judge

("ALJ") was held on September 22, 2009, at which Claimant was represented by counsel and a vocational expert ("VE") appeared and testified. (R. 84-111). On November 17, 2009, the ALJ issued a decision denying Claimant's claim. (R. 156-74). On September 17, 2010, the Appeals Council remanded the claim to the ALJ for further administrative proceedings. (R. 175-77). A second administrative hearing before ALJ Allen was held on January 24, 2011, at which Claimant was represented by counsel, and a witness and vocational expert ("VE") appeared and testified. (R. 112-51). On February 16, 2011, the ALJ issued a decision denying Claimant's claims. (R. 19-34).

Claimant then requested a review of the ALJ's decision by the Appeals Council (R. 17-18), and submitted additional evidence as part of his request (R. 4). After reviewing and incorporating the additional evidence into the record, the Appeals Council denied Claimant's request for review on October 19, 2012. (R. 1-4). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . .

2

. and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)-(c) and 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living;

3

social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the Appeals Council erred in not remanding to the ALJ for further review based on new and material evidence submitted by Claimant. Pl.'s Mem. [DE-23] at 12-13. Claimant also alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC") and (2) improper evaluation of the treating physician's opinion. *Id.* at 7-12.

## FACTUAL HISTORY

### I.  ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: arthrosis and tendinitis in both shoulders; degenerative disc disease of cervical spine; and major depressive disorder. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 25). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild restrictions in his activities of daily living, moderate difficulties in his social functioning and concentration, persistence and pace, with no episodes of decompensation. *Id.*

4

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with no overhead reaching, frequent but not continuous handling, and no exposure to hazardous machinery. (R. 26). The ALJ also identified that Claimant is limited to simple, routine, repetitive tasks. *Id.* In making this assessment, the ALJ found Claimant's statements about his limitations not fully credible. (R. 26-32).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of his past relevant work as a foreman supervisor and lineman. (R. 32). Nonetheless, at step five, upon considering Claimant's age, education, work experience and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 33).

## II.    Claimant's Testimony at the Administrative Hearing

At the time of Claimant's administrative hearing, Claimant was 42 years old and unemployed. (R. 118). Claimant attained an 11th grade education, but later completed his GED. *Id.* Claimant was last employed with South River ENC, a power company, where his duties included supervising a crew of linesman and putting up power lines. (R. 120-21). Claimant has worked solely as a linesman over the past fifteen years. (R. 121). Claimant was injured on the job, received a workers' compensation settlement, and now receives a monthly payment for long term disability. (R. 121, 136). Claimant currently lives with his parents apart from his wife and two children, but

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

visits them at least once a month. (R. 119-20, 133).

Claimant explained numerous medical conditions supporting his disability claim and his inability to work full-time. These medical conditions include left arm pain, neck pain, shoulder pain, leg pain, and right hand pain. As a result of the neck pain, Claimant has difficulty moving his neck and turning his head side to side or downward. (R. 123). Claimant can raise his left arm overhead, but not his right arm. (R. 132). Claimant cannot stand on his feet constantly and estimates he can only stand for approximately 30 minutes before needing to sit for 15 minutes. (R. 124). Claimant is not able to lift more than 10-13 pounds. (R. 125). Claimant takes Tylenol for the pain, but is not able to afford pain medications. *Id.* Claimant lies down for two to three hours per day to help control his pain and often places a rolled towel under his neck when he lies down to provide further relief. (R. 125-26). The level of pain Claimant experiences on a given day depends on his sleep and level of activity. (R. 138). Claimant stopped seeing doctors about his physical condition because he cannot afford the medical expenses. (R. 129).

Since the onset of Claimant's physical limitations, Claimant also experiences depression. (R. 126). Claimant began taking medication for depression through his pain management provider. *Id.* Claimant is currently treated for depression at Cumberland County Mental Health with services he receives free of charge. *Id.* Claimant takes Cymbalta for his depression and meets with a psychiatrist every six weeks, but no longer meets with a therapist because he cannot concentrate to talk to the therapist. (R. 127). Over the course of treatment, Claimant's depression medications have changed and Claimant has completed an application to receive free medication for a period of six months or one year. *Id.* Claimant's depression medication makes him tired and he sleeps during the day sometimes. (R. 131). At the time of the hearing, Claimant was experiencing urinary

6

difficulties, requiring use of a catheter, which he was told may be attributed to his depression medications. (R. 128). Claimant's appetite has changed and he has lost weight. (R. 130). Claimant testified he has difficulty concentrating and difficulty keeping track of the date and time. *Id.*

Claimant has difficulty sleeping and takes a sleeping medication that allows him to sleep for four to five hours, but he feels groggy the next morning. (R. 131). If Claimant is unable to sleep during the night, he may be mean or derogatory the next day. (R. 134). A bad day for Claimant is when he cannot sleep and wakes up groggy and experiencing pain. *Id.* Claimant experiences pain at a level of five to seven on a bad day and Claimant has a bad day at least once a week. (R. 134, 138). A good day for Claimant is when he is able to sleep at night, spend time with his parents, help his parents around the house, take an afternoon nap, and watch TV in the evening. (R. 134). When Claimant is having a good day he helps his parents, sweeps, vacuums, and goes outside in the yard, but he must rest after these activities. (R. 135, 139). Claimant spends most of his days at home and does not go into public unless he has a mental health appointment, needs to pay a bill, or visits his wife and children. (R. 129). Claimant drives himself to his therapist appointments. (R. 137). Claimant testified that he feels uncomfortable in public. (R. 130). When Claimant's brothers or sisters visit his parent's house, he will visit with them briefly, but then go to his bedroom until they leave. (R. 136). Claimant does not go to his son's baseball games because he does not like being with a crowd and his body hurts when it is cold. (R. 137). Claimant is able to put on clothes, brush his teeth, and comb his hair. (R. 132). Claimant is able to feed his dog and manage the dog food once his father breaks the large food bag into smaller weights. (R. 124). Claimant experienced increased pain levels for several days after completing a functional capacity evaluation in 2009. (R. 139).

7

**III. Witness' Testimony at the Administrative Hearing**

Theresa Saunders, Claimant's wife, testified at the administrative hearing. (R. 143-46). Mrs. Saunders testified that she and Claimant had been married 15 years and that before his physical problems arose, Claimant was very active with his children and hunted and fished. (R. 143-44). Claimant did not have difficulty being in public and would go on vacations, travel, and spend time at the beach and at children's baseball games. (R. 145). For approximately one year, Claimant and Mrs. Saunders have lived in separate homes because of Claimant's anger and frustration that Mrs. Saunders could not tolerate. (R. 144-45). Mrs. Saunders testified that Claimant was not angry and mean before his injuries, but that Claimant's depression has worsened and that he now lives "like a hermit." (R. 145).

**IV. Vocational Expert's Testimony at the Administrative Hearing**

Susan Grant testified as a VE at the administrative hearing. (R. 139-43, 146-50). After the VE's testimony regarding Claimant's past work experience (R. 143), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ asked whether the hypothetical individual could perform Claimant's past relevant work assuming the following

> [A]ssume a hypothetical individual . . . who has an RFC to perform light exertional work but is limited to no overhead reaching due to surgery; frequent but not continuous handling due to loss of strength. This individual should avoid working with hazardous machinery. This individual should also be limited to simple routine and repetitive tasks.

(R. 146). The VE stated the hypothetical individual could not perform Claimant's past work, but could perform the positions of addresser (DOT #209.587-010) and telemarketer (DOT #299.357-014). (R. 147). The ALJ next asked the VE whether an individual limited to occasional contact with

8

supervisors and the general public would be able to perform the two jobs the VE previously listed. *Id.* The VE responded that only the position of addresser would be available. *Id.* Further, the ALJ asked the VE the following

> Now assume further that this individual would need to be off task due to pain, standing, walking away from the actual job site every 15 to 30 minutes to alleviate pain, would that change the sampling you provided?

*Id.* The VE responded that the individual would not be able to perform the task assigned in a timely manner. (R. 148).

Claimant's attorney next questioned the VE. Claimant's attorney first asked whether the position of telemarketer fit within the description of simple, routine, repetitive work to which the VE responded in the affirmative and provided a brief description of the tasks involved. (R. 148). Next, Claimant's attorney asked the VE whether a hypothetical individual needing to be absent from work for more than four days per month could perform any jobs at a competitive level. (R. 149). The VE responded that the individual could not perform competitive jobs. *Id.*

## DISCUSSION

### I.     Review of Additional Evidence Submitted to the Appeals Council

Claimant contends that he submitted new and material evidence in the form of a medical source statement completed by Dr. Gluck and that the Appeals Council improperly denied review. Pl.'s Mem. at 12-13.  Claimant submitted to the Appeals Council a Mental Impairment Questionnaire, completed by Dr. Gluck, dated June 2, 2011. (R. 741-50).

The Appeals Council must consider evidence submitted by a claimant with the request for review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95-

9

96 (4th Cir. 1991); 20 C.F.R. §§ 404.976(b)(1), 416.1476(b)(1) ("The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."). Evidence is new if it is not duplicative or cumulative, and material if there is a "reasonable possibility that the new evidence would have changed the outcome of the case." *Wilkins*, 953 F.2d at 96. "[T]he Appeals Council must consider new and material evidence relating to that period prior to the ALJ decision in determining whether to grant review, even though it may ultimately decline review." *Id.* at 95. However, the Appeals Council does not need to explain its reason for denying review of an ALJ's decision. *Meyer v. Astrue*, 662 F.3d 700, 702 (4th Cir. 2011).

Claimant describes Dr. Gluck's medical questionnaire which he submitted to the Appeals Council, but not the ALJ, as new and material evidence relating to the period on or before the date of the ALJ's decision. The Appeals Council considered this evidence and incorporated it into the administrative record, but did not grant review. (R. 1-2, 4). The court finds that the Appeals Council did not err in denying review because the evidence is neither new nor material, and because substantial evidence in the record as a whole supports the ALJ's decision.

Here, Dr. Gluck's medical questionnaire dated June 2, 2011, was approximately four months after the ALJ's decision and approximately six months after Claimant's date last insured. The questionnaire stated that Claimant had marked limitation in social functioning and maintaining concentration, persistence, and pace, and four or more episodes of decompensation within a 12-month period. (R. 745). Dr. Gluck further opined the Claimant would be absent from work more than four days per month. (R. 746). Although this medical questionnaire was completed after the ALJ's decision, it appears that this evidence relates to the period before the date of the ALJ's hearing

10

decision because Dr. Gluck indicates that the symptoms described within the questionnaire have occurred at the same severity since June 9, 2009, and Dr. Gluck in fact evaluated Claimant beginning in mid-2009 and up through the ALJ hearing in January 2011. (R. 750). However, despite the fact that the evidence relates to the period in question, the evidence is not new because it is cumulative and derivative of other evidence already existing in the record and considered by the ALJ. *Wilkins*, 953 F.2d at 96. Dr. Gluck based her medical questionnaire responses on her treatment of Claimant and the findings therein, which denote the same diagnosis of major depressive disorder and similar complaints by Claimant. Dr. Gluck evaluated Claimant a total of almost 11 times between mid-2009 and early-2011 and these notes were included in the record before the ALJ. (R. 693, 741-50). The ALJ expressly considered these treatment notes, noting that Claimant reported improvement when taking Cymbalta and that Dr. Gluck often observed Claimant's mood and affect as normal with no signs of depression when consistently treated with Cymbalta. (R. 30-31, 737). The ALJ also indicated that Claimant failed to apply for the recommended financial assistance program to help cover the costs of Cymbalta which resulted in some periods where Claimant was without medication. (R. 31-32, 722, 724, 728, 731, 735).

Moreover, Dr. Gluck's report is not material. The severity of the limitations she describes is inconsistent with her own treatment notes and other evidence in the record leaving no "reasonable possibility" that Dr. Gluck's questionnaire responses would have changed the ALJ's determination. *See Williams v. Colvin*, No. 5:12-CV-529-BO, 2013 WL 4806965, at *3 (E.D.N.C. Sept. 9, 2013) (holding the report is not material because the alleged limitations are inconsistent with the physician's treatment notes). Further, Dr. Gluck's treatment notes, which were included in the record before the ALJ, provide more complete and detailed medical evidence of Claimant's

11

complaints and treatment history than the questionnaire itself, which wholly lacks explanation. As previously mentioned, the ALJ noted how the treatment note indicated Claimant's condition improved during the course of his treatment when taking Cymbalta as instructed, despite claims of a worsening condition. On November 17, 2010, Dr. Gluck also assigned Claimant a GAF score for the past year higher than she provided on her medical questionnaire. (R. 719, 741). Accordingly, because this evidence documents similar diagnoses and treatments as those already considered by the ALJ and Dr. Gluck's questionnaire describes limitations inconsistent with the treatment notes, this later-submitted evidence would not have changed the ALJ's determination, and therefore, the evidence is not new and material.

## II.    The ALJ's evaluation of the medical opinion evidence

Claimant contends the ALJ erred in not assigning controlling weight to the opinion of Ms. Dawn Baxley, Claimant's psychological therapist. Pl.'s Mem. at 9-12. This court disagrees.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.*;

12

*see also Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence"); *Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Thus, form reports are arguably entitled to little weight due to the lack of explanation. *See Nazelrod v. Astrue*, No. BPG-09-0636, 2010 WL 3038093, at *6 (D. Md. Aug. 2, 2010) (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993)) ("Form reports in which a physician's obligations [sic] is only to check a box or fill in a blank are weak evidence at best.") (alteration added).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."[2] *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996).

---

[2] The Social Security regulations provide that all medical opinions, including opinions of examining and non-examining sources, will be evaluated considering these same factors. 20 C.F.R. §§ 404.1527(e), 416.927(e).

In this case, Ms. Baxley did examine Claimant. However, as the Commissioner properly points out, there was no treatment relationship with Claimant as the record indicates Ms. Baxley only examined the Claimant on one occasion. Def.'s Mem. [DE-26] at 13. *See Yost v. Barnhart*, 79 F. App'x 553 (4th Cir. 2003) ("First, Dr. Massenburg evaluated Yost on only one occasion. Thus, he is not Yost's treating physician."); *Lawson v. Astrue*, No. 7:06-CV-124-D, 2008 WL 111155, at *4 (E.D.N.C. Jan. 8, 2008) (finding no treating relationship when physician only examined the claimant on one occasion). Ms. Baxley examined Claimant on April 15, 2009, when Claimant was interviewed for intake at the Cumberland County Mental Health Center. (R. 687-91). On that date, Ms. Baxley noted that Claimant had no previous psychiatric treatment, diagnosed Claimant with major depressive disorder and assigned Claimant a GAF score of 50. (R. 691, 698). While the ALJ's opinion states that Ms. Baxley saw Claimant twice for therapy sessions post-intake, relying on Ms. Baxley's representation in her questionnaire as to those sessions, his opinion no where discusses the notes from those sessions because they are wholly absent from the record. Again, the only examination record of Ms. Baxley that is in evidence is the April 2009 intake interview establishing a very limited treatment record.

Since no treatment relationship existed between Ms. Baxley and Claimant and Ms. Baxley's opinion regarding Claimant's limitations and ability to work full-time is not supported by her own records and other evidence in the record, the ALJ's decision to assign little weight to Ms. Baxley's questionnaire opinion dated September 14, 2009, is supported by substantial evidence. In the questionnaire, Ms. Baxley opined that Claimant had marked limitation in maintaining social functioning and concentration, persistence or pace. (R. 701). Ms. Baxley also opined that Claimant would be absent from work more than four days per month and is not capable of working a full-time

work week. (R. 702, 706). The ALJ thoroughly summarized Ms. Baxley's findings at the intake interview in April 2009, the sole examination record provided, but explained that Claimant's treatment by Ms. Baxley was limited and that Claimant was primarily treated by Dr. Gluck after August 2009.[3] (R. 31-32). As Ms. Baxley is not in a treating relationship with Claimant, the ALJ properly considered the frequency of examination. *Johnson*, 434 F.3d at 654 (citing 20 C.F.R. § 404.1527) (listing the regulatory factors for evaluating non-treating source opinions, which includes the nature of the treatment relationship). Additionally, the ALJ relied on Dr. Gluck's treatment records which the ALJ described as showing improvement in Claimant's depression when taking Cymbalta and Trazadone. (R. 31, 728, 731, 735, 737). The ALJ noted that worsening symptoms appeared when Claimant stopped taking Cymbalta for a period of time and that Claimant continually failed to apply for a financial assistance program recommended by Dr. Gluck to help cover prescription medication costs. (R. 31-32, 722, 724, 731, 735). Finally, the ALJ also noted that Claimant's mood deteriorated when he was ill and not feeling well, specifically in January 2011 when Claimant noted that he was not sure if Cymbalta was helping his mood because he had been feeling sick for several weeks. (R. 30, 720, 733).

While Claimant points to treatment records showing Claimant as unhappy and without significant improvement, this argument simply asks the court to re-weigh conflicting evidence which it will not do. *See Craig*, 76 F.3d at 589 (noting that the court's duty is not to re-weigh conflicting evidence, but determine whether substantial evidence supported the ALJ's decision to assign the resulting weight to the opinion). Claimant is correct that some of Dr. Gluck's notes contain evidence

---

[3] It is immaterial that the ALJ stated Ms. Baxley had a couple therapy sessions with Claimant when the record only contains notes of the April 2009 intake interview. The ALJ considered Claimant's limited treatment to be a factor weighing against a greater weight assignment, and a record showing less than two therapy sessions only serves to further support the ALJ's reasoning.

15

that Claimant is still suffering from depression symptoms. However, as noted by the ALJ, Claimant had periods during treatment with Dr. Gluck where he was not taking Cymbalta or was otherwise sick and not feeling well for a period of time. (R. 30-32); (R. 720) ("[Claimant] is not sure if the Cymbalta has helped his mood because he has been feeling sick for several weeks."); (R. 722) (noting that Claimant was out of Cymbalta for one month); (R. 724, 728) (noting that Claimant is taking Zoloft, not Cymbalta); (R. 733) (noting that Claimant stated he was not feeling well); (R. 735) (noting Claimant ran out of Cymbalta medication for a period of time).

The absence of a sufficient rationale for the opinion of Ms. Baxley, given the extremely limited examination notes in the evidence of record, and the inconsistency between her opinion and other medical evidence in the record, reasonably downgraded the true evidentiary value of her opinion. Moreover, her form opinion is arguably entitled to little weight given the lack of explanation. The ALJ complied with SSR 96-2p by making his decision sufficiently specific for subsequent viewers to understand the weight accorded Ms. Baxley's opinion and the reasons for said weight. *See Koonce v. Apfel*, 166 F.3d 1209 (4th Cir. 1999) (table) ("An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies or has not given good reason for the weight afforded a particular opinion.") (internal citations and quotations omitted). Accordingly, the ALJ was within his discretion in assigning little weight to Ms. Baxley's opinion and Claimant's argument is without merit.

## III. The ALJ's RFC Determination

Claimant contends the ALJ's RFC determination is erroneous because he failed to include walking and postural/positional changes, rest breaks, and social limitations as supported by the

16

record. Pl.'s Mem. at 7-8. An individual's RFC is defined as that capacity which an individual possesses despite the limitations caused by his physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). The RFC assessment is based on all the relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* SSR 96-8p, 1996 WL 374184, at *5. When a claimant has a number of impairments, including those deemed not severe, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) (citations omitted) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments."). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p, 1996 WL 374184, at *7.

In finding Claimant has the RFC to perform light work with the specified exertional and nonexertional limitations, the ALJ relied on objective medical evidence of record, including physical examinations, treatment notes, opinions regarding Claimant's exertional and nonexertional abilities, Claimant's testimony and diagnostic findings. (R. 27-32). Claimant first contends that the RFC erroneously fails to include the additional exertional limitations of occasional walking and required postural/positional changes, relying on a functional capacity evaluation ("FCE") report completed by a physical therapist in January 2009. Pl.'s Mem. at 8; (R. 708) (stating in report that Claimant performed occasional walking and had "difficulty tolerating sustained positioning"). Claimant

17

essentially contends that the FCE contradicts the ALJ's RFC finding.[4] However, the court's duty is to determine if substantial evidence supports the ALJ's conclusion, not to re-weigh conflicting evidence. *See Mastro*, 270 F.3d at 176. "In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and [her] ability to work." *Jones v. Barnhart*, No. 7:06-CV-144, 2007 WL 178222, at *3 (W.D. Va. Jan. 18, 2007) (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).

Here, the ALJ's decision indicates that he fully considered all the medical evidence regarding Claimant's work ability before determining Claimant maintained the RFC to perform light work without a walking or postural/positional limitation. Specifically, the ALJ summarized in detail the surgeries, treatment procedures, diagnostic findings, and reports of pain associated with Claimant's shoulders and neck, which comprise the bulk of the evidence regarding Claimant's physical condition. The ALJ specifically noted the following: (1) following surgery on both shoulders, Claimant regained full range of motion in his shoulders based on an April 6, 2005 report (R. 396); (2) Claimant continued to complain of neck and shoulder pain with decreased grip strength and hand numbness following surgery on his cervical spine (R. 415, 416, 418); (3) X-rays showed a fully healed and solid surgical fusion and Claimant's sensory neuropathy did not fit with the distribution of his symptoms (R. 415); (4) Claimant reported continued shoulder pain in both shoulders in November 2005 and was diagnosed with scapula-thoracic pain (R. 436-37); (5) Claimant continued

---

[4] Claimant also appears to contend that the ALJ erred by not explicitly citing these FCE statements in his opinion. Pl.'s Mem. at 8. The fact that the ALJ did not explicitly mention the FCE walking and postural/positional limitations is of no merit as the ALJ is not required to cite to every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indiction that the evidence was not considered. *See Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). The ALJ clearly considered the findings of this report because his opinion discussed the report generally.

18

to complain of neck and arm pain and physical examination in May 2006 showed full range of motion of neck and normal motor strength in upper extremities, with a myelogram with CT showing a fully fused cervical graft (R. 438, 440, 460-61); (6) a pain management physician diagnosed Claimant with neck, shoulder and arm pain and headaches and prescribed pain medication, injections, and physical therapy, but Claimant stopped attending physical therapy (R. 476, 500); and (7) physical examination in July 2007 revealed Claimant was able to heel/toe walk and tandem walk without difficulty (R. 506).

Notably, little, if any, of the medical evidence before the ALJ made findings regarding walking or postural/positional limitations for Claimant. Claimant's complaints and the treatment by various physicians concerned the shoulders, cervical spine, and upper extremity conditions. The only medical evidence prior to the FCE report discussing Claimant's sustained walking ability appeared in a physical RFC assessment that indicated Claimant could stand and/or walk six hours in an eight-hour workday and the ALJ's opinion adequately summarized this report. (R. 30, 511). Further, the ALJ gave significant weight to Dr. Lestini's opinion which included no walking or postural/positional limitations. (R. 31, 438). While there may be conflicting evidence as to Claimant's need for walking and postural/positional limitations, it is the province of the ALJ to resolve inconsistencies in the record leaving this court to determine if the ALJ's determination is supported by substantial evidence. *See Jones*, 2007 WL 178222, at *3. The ALJ provided an extensive summary of the medical evidence relating to Claimant's physical difficulties, indicating he fully considered the nature of Claimant's exertional abilities. Here, the ALJ did not err by not including walking and postural/positional limitations in his RFC determination.

19

Claimant also briefly argues that the ALJ also should have incorporated the need for "frequent rest breaks" into his RFC determination based on the findings of the same FCE report. Pl.'s Mem. at 8. Claimant points to no other evidence in support of his argument and fails to develop a complete argument as to this contention. The FCE report stated that Claimant's rest breaks were "secondary to deconditioning" and there is no other evidence in the record regarding the need for such breaks. (R. 708). Accordingly, the ALJ did not err in failing to include a need for rest breaks in his RFC.

Finally, Claimant contends that the ALJ's RFC determination is erroneous because the ALJ failed to include a limitation as to social functioning even though he recognized moderate difficulties in social functioning in his step three listing analysis. Pl.'s Mem. at 8-9. Claimant relies on the two mental impairment questionnaires completed by Ms. Baxley and Dr. Gluck which indicate moderate and marked limitations in this functional area. Once again, the ALJ thoroughly summarized the medical evidence regarding Claimant's mental impairments and substantial evidence supports his RFC determination with respect to Claimant's mental functional abilities. The ALJ specifically acknowledged the following as to Claimant's mental abilities: (1) Claimant reported in September 2006 that he felt depressed because of his pain and was prescribed Effexor and Klonopin (R. 498); (2) in April 2008 Claimant was assessed for treatment at Alternative Care Treatment Systems reporting a depressed mood, but no diagnosis was made and Claimant did not return for treatment (R. 677-79); (3) Claimant sought mental health treatment in March 2009 at the Cumberland County Mental Health Center and, upon intake examination, reported feeling depressed (R. 687); (4) mental status examination in April 2009 indicated Claimant had depressed mood, but normal and appropriate affect, appearance, body movement, attention and concentration, and thought processes

20

(R. 687, 689); (5) Claimant was diagnosed with major depressive disorder, was treated by Dr. Gluck for follow-up and reported in November 2009 that he was doing much better on Cymbalta (R. 737); (6) a mental impairment questionnaire completed by Ms. Baxley indicated Claimant was moderately to markedly limited in functional ability (R. 701); and (7) Claimant failed to apply for the financial assistance program to cover his prescription medication costs (R. 722, 724, 728, 731, 735). Additionally, the ALJ ultimately gave "little weight" to the questionnaire completed by Ms. Baxley due to Claimant's improvement with treatment by Dr. Gluck. (R. 31). The ALJ did not consider the questionnaire completed by Dr. Gluck because it was submitted after his decision, but Dr. Gluck's treatment notes were considered by the ALJ and notably, these notes do not indicate significant problems with social functioning. Dr. Gluck occasionally notes Claimant as isolating himself to his house (R. 722, 728), but the treatment notes otherwise describe Claimant as frequently making family visits and spending time with his children (R. 720, 724, 726, 730-31). Further, Ms. Baxley's notes indicate no "oppositional-defiant behavior" with respect to Claimant's interactions with other individuals. (R. 687). Claimant points to no other evidence of record in support of his argument and the fact that the ALJ found Claimant to have moderate difficulties in social functioning at step three does not undercut the ALJ's RFC determination. *See* SSR 96-8p, 1996 WL 374184, at \*4 ("The [ALJ] must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment."). Based on the foregoing, Claimant's argument is without merit. The ALJ properly addressed the nature and extent of Claimant's mental limitations and determined Claimant's RFC on the basis of a thorough review of the evidence of record. *See* 20 C.F.R. § 404.1520(a).

21

In sum, the ALJ's RFC determination is supported by substantial evidence and this court will not seek to re-weigh the evidence.

## CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-22] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-24] be GRANTED and the final decision of the Commissioner be UPHELD.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

Submitted, this the 14th day of February 2014.

Robert B. Jones, Jr.
United States Magistrate Judge